UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

**S & Y ENTERPRISES, LLC,**

                              Debtor.

Chapter 11

Case No. 10-50623 (ESS)

## CAB BEDFORD LLC'S PLAN OF REORGANIZATION OF S&Y ENTERPRISES, LLC DATED AUGUST 10, 2011

## ARTICLE I

## SUMMARY

      1.01    This Plan under chapter 11 of the Bankruptcy Code, proposed by CAB Bedford LLC ("CAB Bedford"), proposes to pay all creditors of the Debtor[1] whose Claims are Allowed in full in cash from the proceeds of the sale of the real estate owned by the Debtor, located at 130 North 4th St. (a/k/a 193 Berry Street, a/k/a 240 Bedford Ave.), Brooklyn, New York, together with the adjoining real estate owned by Sky Lofts[2] located at 242-246 Bedford Avenue, Brooklyn, New York (collectively, the "Property"), in accordance with the terms set forth in the Term Sheet attached hereto as Exhibit A (the "New CAB Offer"). CAB Bedford will file a Plan Supplement containing that certain New CAB Bedford Purchase Agreement setting forth the definitive terms of the New CAB Offer at least twenty (20) days prior to the Confirmation Hearing on this Plan.

      1.02    This Plan provides for three classes of secured claims; one class of priority unsecured claims, two classes of unsecured claims; and one class of equity Interests. Secured creditors and unsecured creditors holding Allowed Claims shall receive distributions of one hundred (100%) percent of their Allowed Claims in cash. This Plan also provides for the payment in full in cash of all Allowed Administrative Expense Claims and Allowed Priority Claims.

      1.03    All creditors and equity Interest holders should refer to Articles III through VIII of this Plan for information regarding the precise treatment of their Claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity Interest holders has been circulated with this Plan.

---

[1]    All capitalized terms herein shall have the meanings ascribed to them in Article II of this Plan.

[2]    Sky Lofts LLC, which filed for relief under chapter 11 of the Bankruptcy Code on December 8, 2010 in the Eastern District of New York (Case No. 10-51510-ESS), is an entity that shares the same management and equity ownership as the Debtor. Concurrently with the filing of this Plan, CAB Bedford has filed a corresponding plan for Sky Lofts.

## ARTICLE II

## GENERAL PROVISIONS

2.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

"<u>Administrative Expense Claim Bar Date</u>" means the first business day that is forty-five (45) days following entry of the Confirmation Order, or such later date as the Bankruptcy Court orders otherwise.

"<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Debtor's estate under sections 503(b) or 507 of the Bankruptcy Code, including, without limitation, for: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's estate and operating the businesses of the Debtor; (b) Allowed Claims of retained professionals in the Bankruptcy Case; and (c) all fees and charges assessed against the Debtor's estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

"<u>Allowed</u>" means, with respect to a Claim or Interest in the Bankruptcy Case, or any portion of such Claim or Interest in any class or category specified herein, a Claim or Interest that either (a) is listed in the Schedules, as of the Effective Date, as neither disputed, contingent nor unliquidated and with respect to which no contrary or superseding proof of claim has been filed, except any Insider Claims, which shall be deemed Disputed Claims pursuant to this Plan; (b) is evidenced by a proof of claim filed on or before the applicable Claims Bar Date and is not listed as disputed, contingent or unliquidated in the Schedules, and as to which no objection been filed on or before the Claims Objection Deadline; (c) is not the subject of an objection to allowance that (i) was filed on or before the Claims Objection Deadline and (ii) has not been settled, waived, withdrawn or denied pursuant to a Final Order; (d) is expressly Allowed (i) pursuant to a Final Order, or (ii) pursuant to the terms of this Plan.

"<u>Balance</u>" shall mean the Purchase Consideration minus the amount held in the Purchase Escrow.

"<u>Bankruptcy Case</u>" means the chapter 11 bankruptcy case of the Debtor.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of New York.

"<u>CAB Bedford</u>" means CAB Bedford, LLC.

"<u>CAB Bedford Secured Claim</u>" means the secured Claim of CAB Bedford against the Debtor in the principal amount of $575,000.00.

2

"CAB Bedford Unsecured Claim" means all Claims of CAB Bedford arising from or in connection with the Debtors' rejection of the Original Sale Agreement.

"CAB Plan" means this plan of reorganization of the Debtor dated August 10, 2011 proposed by CAB Bedford.

"Capital One" means Capital One, N.A.

"Capital One Adversary Proceeding" means that certain adversary proceeding captioned *S&Y Enterprises LLC* v. *Capital One, N.A.*, Adversary Proceeding No. 10-01328-ESS.

"Capital One Disputed Claim Amount" means $2,466,666.67, comprising the amount of interest and fees asserted by Capital One that will have accrued on the Capital One Secured Claim through December 5, 2012.

"Capital One Secured Claim" means the secured Claim of Capital One against the Debtor in the amount of $5,602,619.00, exclusive of any postpetition interest or fees.

"Claim" means "claim" as defined in section 101(5) of the Bankruptcy Code, as supplemented by section 102(2) of the Bankruptcy Code, against the Debtor.

"Claims Bar Date" means the last date to file proofs of claim as set forth in the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Matter of Notice Thereof [S&Y Dkt. No. 20], establishing a deadline for filing proofs of claims against the Debtors of (i) March 4, 2011, at 5:00 P.M. (ET) for persons and entities; and (ii) June 6, 2011 for government units or as the Bankruptcy Court orders otherwise for Claims arising from the rejection of executory contracts or unexpired leases.

"Claims Objection Deadline" means the first business day that is ninety (90) days following entry of the Confirmation Order, or such later date as the Bankruptcy Court orders otherwise.

"Confirmation Date" means the date of entry of the Confirmation Order by the Bankruptcy Court.

"Confirmation Hearing" means the date(s) on which the Bankruptcy Court conducts a hearing to consider whether to confirm this Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

"Debtor" means S&Y Enterprises, LLC.

"Disclosure Statement" means the *Disclosure Statement for CAB Bedford LLC's Plan of Reorganization of S&Y Enterprises, LLC*, dated August 10, 2011,

as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the CAB Plan.

"Disputed Claim" means (i) any Insider Claim, and (ii) any Claim, including any Administrative Expense Claim, against the Debtor to the extent that (a) the allowance of such Claim or any portion thereof is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, (b) such Claim is scheduled by the Debtor in the Schedules as disputed, contingent and/or unliquidated, (c) such Claim is in excess of the amount scheduled as other than disputed, unliquidated or contingent, or (d) such Claim may be subject to section 502(d) of the Bankruptcy Code.

"Disputed Insider Claims Reserve" means the reserve for payment of Disputed Insider Claims created pursuant to Article VI of this Plan.

"Disputed Non-Insider Claims Reserve" means the reserve for the payment of Disputed Claims that are not Insider Claims created pursuant to Article VI of this Plan.

"Effective Date" means the first business day on which all of the conditions specified in Article XI of this Plan have been satisfied or waived in accordance with Article XI of this Plan; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first business day after such stay is no longer in effect.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) that has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, further review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay or rehearing is pending.

"Galster Funding" means Galster Funding LLC.

"Galster Funding Secured Claim" means the secured Claim of Galster Funding against the Debtor in the amount of $750,000.00.

"Initial Distribution Date" means the Effective Date or as soon thereafter is practicable.

"Insider" means "insider" as defined in section 101(31) of the Bankruptcy Code.

"Insider Claim" means any Claim originally held by an Insider, regardless of whether such Claim is or was subsequently transferred to a non-Insider, including, without limitation, the following Insider Claims set forth on Schedule F of S&Y's Schedules and Statement of Financial Affairs dated March 2, 2011:  (i) unsecured nonpriority claim of Maple St., LLC in the amount of $840,000.00; (ii) unsecured nonpriority claim of Pacific Dean Realty, LLC in the amount of $340,000.00; (iii) unsecured nonpriority claim of The Backer Group, LLC in the amount of $1,089,000.00; and (iv) unsecured nonpriority claim of Yehuda Backer in an "unknown" amount.

"Interest" means all rights arising from any equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtor, or membership interest in the Debtor.

"New CAB Bedford Purchase Agreement" means the sale agreement to be filed as a Plan Supplement setting forth the definitive terms of the New CAB Offer, as defined in Section 1.01 of this Plan.

"New CAB Offer" shall have the meaning set forth in Section 1.01 of this Plan.

"North 3rd" means North 3rd Development LLC.

"North 3rd S&Y Claim" means the unsecured Claim of North 3rd, the amount of which excludes all amounts due to North 3rd that is allocable to Sky Lofts.

"Original Sale Agreement" means the agreement of sale between the Debtor, Sky Lofts and CAB Bedford dated July 12, 2010, as amended, for the Property.

"Petition Date" means November 11, 2010, the date on which S&Y commenced its Chapter 11 Case.

"Plan" means this plan of reorganization of the Debtor dated August 10, 2011 proposed by CAB Bedford.

"Plan Supplement" means the forms of documents specified in Section 10.03 of this Plan.

"Priority Claim" means any Claim entitled to priority treatment under section 507 of the Bankruptcy Code.

"Property" means the S&Y Property and the Sky Lofts Property.

"Purchase Consideration" means the amount, $21,969,118.00, to be paid by CAB Bedford for the Property pursuant to the New CAB Bedford Purchase Agreement.

"Purchase Escrow" shall mean $1,000,000.00 deposited by CAB Bedford in escrow as a good faith deposit for the purchase of the Property.

"Record Date" means the record date for purposes of making distributions under this Plan on account of Allowed Claims and Interests entitled to receive distributions under this Plan, which date shall be the Effective Date.

"S&Y Property" means the Property of the Debtor located at 130 North 4th St. (a/k/a 193 Berry Street, a/k/a 240 Bedford Ave.), Brooklyn, New York.

"Schedules" means the schedules of assets and liabilities, the list of holders Interests and the statements of financial affairs filed with the Bankruptcy Court by the Debtor, including any amendments or supplements thereto.

"Sky Lofts" means Sky Lofts, LLC, which is an affiliate of the Debtor that filed for relief under chapter 11 of the Bankruptcy Code on December 8, 2010 in the Eastern District of New York (Case No. 10-51510-ESS).

"Sky Lofts Property" means the Property of the Debtor located at 242-246 Bedford Ave, Brooklyn, New York that is adjacent to the S&Y Property.

"Term Sheet" means the Term Sheet setting forth the New CAB Offer attached to this Plan as Exhibit A.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.01    Class I. **Classification:** Class I consists of the Capital One Secured Claim. Class I is an unimpaired class.

**Treatment:** The Capital One Secured Claim shall be Allowed on the Effective Date and paid in full in cash on the Initial Distribution Date using funds from the Purchase Consideration. As of the Effective Date, an amount equal to the Capital One Disputed Claim Amount shall be held in the Disputed Claims Reserve. To the extent the Capital One Disputed Claim is Allowed, in whole or in part, such Allowed amounts shall be paid in full in cash within ten (10) days of entry of a Final Order providing for such allowance.

3.02    Class II. **Classification:** Class II consists of the CAB Bedford Secured Claim. Class II is an unimpaired class.

**Treatment:** The CAB Bedford Secured Claim, including all accrued and unpaid interest accruing on such Claim, shall be Allowed on the Effective Date and paid in full in cash on the Initial Distribution Date.

3.03    <u>Class III</u>. **Classification:** Class III consists of the Galster Funding Secured Claim. Class III is an unimpaired class.

**Treatment:** The Galster Funding Secured Claim, including accrued and unpaid interest accruing on such Claim, shall be Allowed on the Effective Date and paid in full in cash on the Initial Distribution Date.

3.04    <u>Class IV</u>. **Classification:** Class IV consists of all Priority Claims. Class IV is an unimpaired class.

**Treatment:** Class IV Claims shall be Allowed on the Effective Date and paid in full in cash on the Initial Distribution Date.

3.05    <u>Class V</u>. Class V consists of all general unsecured nonpriority Claims that are not Insider Claims, including, but not limited to, the North 3rd S&Y Claim. Class V is an unimpaired class.

**Treatment:** Class V Claims, to the extent Allowed on the Effective Date, shall be paid in full in cash on the Initial Distribution Date. To the extent a Class V Claim is not Allowed or constitutes a Disputed Claim as of the Effective Date, an amount equal to the disputed portion of any such Claim shall be held in the Disputed Non-Insider Claims Reserve pending resolution of the Claim. The Allowed amount of the Claim shall be paid in full in cash to the holder of such Claim within ten (10) days of entry of a Final Order providing for such allowance.

3.06    <u>Class VI</u>. Class VI consists of all Insider Claims. Class VI is an unimpaired class.

**Treatment:** Class VI Claims, to the extent Allowed on the Effective Date, shall be paid in full in cash on the Initial Distribution Date. To the extent a Class VI Claim is neither Allowed nor disallowed as of the Effective Date, an amount equal to the disputed portion of any such Claim shall be held in the Disputed Insider Claims Reserve pending resolution of the Claim. The Allowed amount of the Claim shall be paid in full in cash to the holder of such Claim within ten (10) days of entry of a Final Order providing for such allowance.

3.07    <u>Class VII</u>. **Classification:** Class VII consists of Interests in the Debtor. Class VII is an unimpaired class.

**Treatment:** Upon the Effective Date, holders of Class VII Interests shall retain their Interests in the Debtor.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND U.S. TRUSTEE FEES

4.01    <u>United States Trustee Fees</u>.  All fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) shall accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan shall be paid on the Initial Distribution Date.

4.02    <u>Administrative Expense Claims</u>.  All Allowed Administrative Expense Claims shall be paid in full on or before the Initial Distribution Date, or, if Allowed subsequent to the Initial Distribution Date, then within ten (10) days of entry of a Final Order providing for such allowance.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE CAB PLAN

5.01    On the Effective Date:

    (a)    CAB Bedford shall release the Purchase Escrow and tender the Balance to the Debtors in exchange for the Property free and clear of all liens and claims;

    (b)    CAB Bedford shall be deemed to have waived the CAB Bedford Unsecured Claim; and

    (c)    The Debtors shall establish the Disputed Non-Insider Claims Reserve and the Disputed Insider Claims Reserve in accordance with Article VI of this Plan.

5.02    The Purchase Consideration shall be distributed by the Debtor to classes of Claims and Interests, or as otherwise provided, in accordance with Article VI herein.

5.03    On and after the Effective Date, the Debtor shall retain, and have the sole right to prosecute, the Capital One Adversary Proceeding.

## ARTICLE VI

## PROVISIONS REGARDING DISTRIBUTIONS UNDER
## THIS PLAN AND TREATMENT OF DISPUTED CLAIMS

6.01    Distributions.

(a)    <u>Delivery of Distributions</u>.  Distributions under this Plan shall be made by the Debtor or its designee to the holders of all Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded by proofs of Claim or transfers of Claim filed pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") (or at the last known addresses of such holders if the Debtors or the Reorganized Debtors have been notified in writing of a change of address).

(b)    <u>Distribution of Cash</u>.  Any payment of cash by the Debtor pursuant to this Plan shall be made at the option and in the sole discretion of the Debtor by a check drawn on, or wire transfer from, a bank selected by the Debtor.

(c)    <u>Distributions to Holders as of the Record Date</u>.  As of the close of business on the Record Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Record Date.  The Debtor shall instead be entitled to recognize and deal for purposes of this Plan with only those record holders stated on the claims register as of the close of business on the Record Date.

(d)    <u>Saturdays, Sundays, or Legal Holidays</u>.  If any payment or act under this Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed as of the required date.

(e)    <u>Distributions for Claims Allowed as of the Effective Date</u>.  On the Initial Distribution Date, the Debtor shall make the distributions pursuant to this Plan to the holders of Allowed Claims.

6.02    Disputed Non-Insider Claims Reserve.

(a)    <u>Establishment of Disputed Non-Insider Claims Reserve</u>.  On the Effective Date or as soon as practicable thereafter, the Debtor shall create a Disputed Non-Insider Claims Reserve in an amount of Cash equal to one hundred percent (100%) of distributions to which holders of Disputed Claims that are not Insider Claims would be entitled under this Plan as of such date if such Disputed Claims were Allowed Claims in their Disputed Claim amounts (excluding duplicate Claims).

(b)     Cash Held in the Disputed Non-Insider Claims Reserve.
Cash held in the Disputed Non-Insider Claims Reserve shall be segregated and
designated as held in trust for the benefit of holders of Allowed Claims that are not
Insider Claims.  Subject to subsection (d) below, cash held in the Disputed Non-Insider
Claims Reserve shall not constitute property of the Debtor.  The Debtor shall pay, or
cause to be paid, out of the funds held in the Disputed Non-Insider Claims Reserve, any
tax imposed on the Disputed Non-Insider Claims Reserve by any governmental unit with
respect to income generated by cash held in the Disputed Non-Insider Claims Reserve.

(c)     Distributions Withheld for Disputed Claims.  The holder of
a Disputed Claim that is not an Insider Claim that becomes an Allowed Claim subsequent
to the Effective Date shall receive a distribution of cash (with any post-Effective Date
interest thereon earned in the Disputed Non-Insider Claims Reserve) from the Debtor, as
applicable, within ten (10) days of entry of a Final Order providing for such allowance.

(d)     Excess Cash.  If after the resolution by stipulation or Final
Order of any Disputed Claim that is not an Insider Claim there remains cash in the
Disputed Non-Insider Claims Reserve in excess of the distributions that holders of such
Allowed Claim(s) are entitled to receive from such Disputed Non-Insider Claims
Reserve, such cash shall immediately be transferred to and vest in the Debtors.

6.03    Disputed Insider Claims Reserve.

(a)     Establishment of Disputed Insider Claims Reserve.  On the
Effective Date or as soon as practicable thereafter, the Debtor shall create a Disputed
Insider Claims Reserve in an amount of $2,269,000.00.

(b)     Cash Held in the Disputed Insider Claims Reserve.  Cash
held in the Disputed Insider Claims Reserve shall be segregated and designated as held in
trust for the benefit of holders of Allowed Claims that are Insider Claims.  Subject to
subsection (d) below, Cash held in the Disputed Insider Claims Reserve shall not
constitute property of the Debtor.  The Debtor shall pay, or cause to be paid, out of the
funds held in the Disputed Insider Claims Reserve, any tax imposed on the Disputed
Insider Claims Reserve by any governmental unit with respect to income generated by
cash held in the Disputed Insider Claims Reserve.

(c)     Distributions Withheld for Disputed Insider Claims.  The
holder of a Disputed Claim that is an Insider Claim that becomes an Allowed Claim
subsequent to the Effective Date shall receive a distribution of cash (with any post-
Effective Date interest thereon earned in the Disputed Insider Claims Reserve) from the
Debtor, as applicable, within ten (10) days of entry of a Final Order providing for such
allowance.

(d)     Excess Cash.  If after the resolution by stipulation or Final
Order of any Disputed Claim that is an Insider Claim there remains cash in the Disputed
Insider Claims Reserve in excess of the distributions that holders of such Allowed
Claim(s) are entitled to receive from such Disputed Insider Claims Reserve, such cash

shall immediately be transferred to CAB Bedford or its designee, in the manner and to the location to be designated by CAB Bedford.

## ARTICLE VII

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

7.01    Objections to Claims that are not Allowed Claims as of the Effective Date shall be filed and served on the holders of such Claims by the Claims Objection Deadline.  The Debtor will have the sole authority to object to Claims, except any part in interest may object to any Insider Claim.  If an objection has not been filed to a proof of claim or a Claim listed in the Schedules as neither disputed, contingent nor unliquidated by the Claims Objection Deadline, the Claim to which the proof of claim or Schedules relates shall then be deemed an Allowed Claim.  To the extent such objection concerns the amount of the Claim, the undisputed portion of such Claim shall be deemed an Allowed Claim on the Claims Objection Deadline and the remaining portion shall be deemed a Disputed Claim.  The Debtor will have no obligation to review and/or respond to any Claim that is not filed by the applicable bar date unless: (i) the filer has obtained an order from the Bankruptcy Court authorizing it to file such Claim; or (ii) the Debtor have consented to the filing of such Claim in writing.

7.02    Holders of Administrative Expense Claims (except for any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code) not paid prior to the Confirmation Date shall submit requests for payment on or before the Administrative Expense Claims Bar Date or forever be barred from doing so and from receiving payment thereof.  The Debtor shall have until the Claims Objection Deadline to review and object to all applications for the allowance of Administrative Expense Claims.

7.03    The Debtor will have the power and authority to settle and compromise a Disputed Claim except any Insider Claim with Bankruptcy Court approval and compliance with Bankruptcy Rule 9019.

## ARTICLE VIII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01    Executory Contracts and Unexpired Leases.  All executory contracts and unexpired leases are deemed rejected on the Effective Date.

8.02    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases.  All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to this Plan, if any, shall be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any entity that is required to file a proof of claim arising from the rejection of an executory contract or an unexpired lease that fails to timely do so shall be forever barred, estopped

and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtor the estate or any of their respective property, or the Debtor and such Claim shall be forever discharged.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.01    The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the CAB Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes:  (1) to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Interest; (5) to hear and determine timely objections to, or other proceedings challenging the allowance of Claims; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the CAB Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the CAB Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the CAB Plan requires an order of, or other relief from, the Bankruptcy Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine any Causes of Action preserved under the CAB Plan; and (14) to enter a final decree closing the Bankruptcy Case.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.01    Modification of the CAB Plan.

(a)    Pre-Confirmation Modifications.

CAB Bedford may alter, amend, or modify the CAB Plan before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

(b)     Post-Confirmation Immaterial Modifications.

After the Confirmation Date, CAB Bedford may, with the approval of the Bankruptcy Court, without notice to all holders of Claims and Interests, insofar as it does not materially and adversely affect the holders of Claims and Interests, correct any defect, omission or inconsistency in the CAB Plan in such manner and to such extent as may be necessary to facilitate consummation of the CAB Plan.

(c)     Post-Confirmation Material Modifications.

After the Confirmation Date, CAB Bedford may alter or amend the CAB Plan in a manner which, as determined by the Bankruptcy Court, materially and adversely affects holders of Claims or Interests, provided that such alteration or amendment is made after a hearing as provided in section 1127 of the Bankruptcy Code.

10.02   Governing Law.

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the CAB Plan and any agreements, documents, and instruments executed in connection with the CAB Plan, unless otherwise specified.

10.03   Plan Supplement.

Forms of the documents relating to the Term Sheet, including the New CAB Bedford Purchase Agreement and such other documents and information as CAB Bedford determines to be necessary or appropriate to the implementation and/or confirmation of the CAB Plan shall be contained in the Plan Supplement, which shall be filed with the Clerk of the Bankruptcy Court no later than twenty (20) days prior to the Confirmation Hearing.

10.04   Withholding and Reporting Requirements.

In connection with the CAB Plan and all instruments issued in connection herewith and distributions hereunder, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

10.05   Transfer Free and Clear.

Pursuant to section 1141(c) of the Bankruptcy Code, the transfer of the Property shall be free and clear of all claims and interests of creditors, equity security holders, and of general partners in the Debtor.

10.06   Exemption From Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer and exchange under the CAB Plan of any securities, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp tax or other similar tax.

10.07   Exhibits/Schedules.

All exhibits and schedules to the CAB Plan and the Plan Supplement are incorporated into and constitute a part of the CAB Plan as if fully set forth herein.

10.08   Conflict.

The terms of this Plan shall govern in the event of any inconsistency with the summary of the CAB Plan set forth in the Disclosure Statement. The terms of the Confirmation Order shall govern in the event of any inconsistency with the CAB Plan or the summary of the CAB Plan set forth in the accompanying Disclosure Statement.

10.09   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.10   Binding Effect.

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

10.11   Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE XI

## CONFIRMATION AND EFFECTIVENESS OF THE CAB PLAN

11.01   Conditions Precedent to Confirmation.

This Plan shall not be confirmed by the Bankruptcy Court unless and until the following condition has been satisfied in full or waived by CAB Bedford:

    (a)      the Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to this Plan in a form and substance acceptable to CAB Bedford;

    (b)      the New CAB Bedford Purchase Agreement shall be in a form acceptable to CAB Bedford; and

    (c)      the Confirmation Order shall be in a form acceptable to CAB Bedford.

11.02  Conditions Precedent to Effective Date.

This Plan shall not become effective unless and until the following conditions have been satisfied in full or waived by CAB Bedford:

    (a)      the CAB Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be acceptable to the CAB Bedford;

    (b)      the Confirmation Order shall have been entered by the Bankruptcy Court, in a form acceptable to CAB Bedford;

    (c)      the Confirmation Order shall have become a Final Order and is in full force and effect; and

    (d)      the transaction set forth in the New CAB Bedford Purchase Agreement shall be fully consummated.

11.03  Waiver of Conditions.

CAB Bedford may waive any or all of the conditions set forth in this Article XI at any time without leave or order of the Bankruptcy Court.

11.04  Effect of Failure of Conditions.

In the event that the Effective Date does not occur on or prior to October 31, 2011, or such later date as may be agreed to by CAB Bedford (a) the Confirmation Order shall be vacated, (b) no distributions under the CAB Plan shall be made, (c) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtor's obligations with respect to the Claims and Interests shall remain unchanged.

## ARTICLE XII

## NO DISCHARGE OF DEBTOR

12.01 <u>No Discharge</u>. In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor shall not receive any discharge of debt in this bankruptcy case.


Dated: New York, New York
August 10, 2011

CAB BEDFORD LLC


By:    /s/ Michael Cayre
       Name:  Michael Cayre
       Title:  Partner



By:    /s/ Kelley A. Cornish
       Kelley A. Cornish
       A Member of the Firm

Elizabeth R. McColm
Jonathan Koevary
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Main Telephone:  (212) 373-3000
Main Facsimile:  (212) 757-3990

*Attorneys for CAB Bedford LLC*

# EXHIBIT A
## TO CAB BEDFORD LLC'S PLAN OF REORGANIZATION
## <u>OF S&Y ENTERPRISES, LLC DATED AUGUST 10, 2011</u>

<u>TERM SHEET RE PURCHASE OF PROPERTY</u>

1.      <u>Property to be Acquired</u>.  240-246 Bedford Avenue, 118 North 4th Street and 193 Berry Street, Brooklyn, New York, also known as Block 2351, Lots 6 and 24.

2.      <u>Sellers.</u> Sky Lofts LLC and S&Y Enterprises LLC.

3.      <u>Purchaser</u>.  CA Bedford LLC or affiliated assignee.

4.      <u>Structure</u>.      The structure of the sale shall be all-cash in exchange for the transfer of the Property free and clear of all liens, claims and encumbrances to Purchaser at closing.

5.      <u>Purchase Price</u>.      The total amount of $21,969,118.00, subject to reimbursement of any excess proceeds of those certain Disputed Insider Claims Reserves as defined in the Plans of Reorganization of the Sellers dated August 10, 2011 (the "<u>Plans</u>").

6.      <u>Other Key Terms</u>.  Simultaneous with the filing of a Purchase and Sale Agreement ("<u>PSA</u>") in accordance with the Plans, Purchaser shall deposit a "refundable" deposit in the amount of One Million Dollars ($1,000,000) to be held in escrow by a title agency selected by Purchaser pursuant to the terms of the PSA as "escrow agent" (said title agency shall execute the PSA as escrow agent).  The deposit shall only be refundable in the event of Sellers' failure to close or inability to pass title to Purchaser on the terms set forth in the PSA.

7.      <u>Closing</u>.  Closing shall occur within forty-five (45) days following Court Approval (defined below).

8.      <u>Occupancies</u>.  The Property shall be conveyed free of all occupancies, leases, tenancies, licenses and/or similar arrangements.

9.      <u>Investigation.</u>  Purchaser has fully inspected the Property and is familiar with the conditions thereat.  There shall be no further due diligence required by Purchaser and the Property shall be conveyed in "as-is" condition.

10.      <u>Status of Title</u>.  Title to the Property shall be passed by Sellers without lien or encumbrance whatsoever.  Subject to the foregoing, Purchaser shall accept title subject to:

(i)      Municipal zoning ordinances and existing variances;

(ii)      Recorded covenants, easements and restrictions existing as of record as of the date hereof;

(iii)    The state of facts set forth on that certain survey of the Property dated July 12, 2010 and prepared by AAA Group; and

(iv)    Unpaid nondelinquent real estate taxes and assessments, subject to standard adjustment.

11.    <u>Court Approval</u>.  Purchaser acknowledges that Sellers have filed petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. Section 101 et. seq. (the "<u>Bankruptcy Code</u>") with the United Stated Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>").  Accordingly, the validity and enforceability of the PSA shall be specifically subject to and conditioned upon entry of an order of the Bankruptcy Court approving the sale of the Property pursuant to the PSA (the "<u>Bankruptcy Court Approval Order</u>") in substance reasonably acceptable to Purchaser.